## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Kelly Richards, *as assignee of insureds,*
*William Dobbs and Karen Arntzen*,

        Plaintiff,

v.

State Farm Fire and Casualty Company,

        Defendant.

File No. 24-CV-03192 (JMB/SGE)

**ORDER**

---

Jenneane Jansen, Jansen & Palmer, LLC, Minneapolis, MN; and Kyle Kosieracki, Tarshish Cody, PLC, Richfield, MN, for Plaintiff Kelly Richards.

Scott G. Williams and Lindsey A. Streicher, HAWS-KM, P.A., St. Paul, MN, for Defendant State Farm Fire and Casualty Company.

---

This matter is before the Court on two motions: (1) Plaintiff Kelly Richards's objection to the June 4, 2025 ruling of Magistrate Judge Shannon G. Elkins, in which the Magistrate Judge granted Defendant State Farm Fire and Casualty Company's (State Farm) motion to quash a third-party subpoena issued by Richards's counsel (Doc. No. 35); and (2) State Farm's motion for complete summary judgment. (Doc. No. 23.)[1] For the reasons discussed below, the Court overrules Richards's objection to the Magistrate Judge's ruling granting State Farm's motion to quash and grants State Farm's motion for summary judgment.

---

[1] State Farm filed two identical summary judgment motions, one on April 2, 2025 (Doc. No. 13) and one on May 27, 2025 (Doc. No. 23). Because the May 27, 2025 motion superseded the April 2, 2025, it is the only pending motion before the Court.

**STATEMENT OF UNDISPUTED FACTS AND PROCEDURAL HISTORY**

**A.    The Policies**

At all times relevant to this lawsuit, William Dobbs and Karen Arntzen were in a romantic relationship and resided together, but they were not married.  (Doc. No. 38 ¶ 2–3.)  Dobbs was an insured under a Condominium Unitowners insurance policy (Condo Policy) issued by State Farm.  (Doc. No. 25-1 at 2.)  According to Arntzen, she believed she was also a named insured on the Condo Policy.[2]  (Doc. No. 38 ¶ 7.)  The Condo Policy provides for a $300,000 liability limit.  (Doc. No. 25-1 at 2.)

In an affidavit, Arntzen avers that, upon purchasing a new vehicle in 2017, she reached out to her insurance agent, Ian Davy, to obtain coverage for her vehicle.  (Doc. No. 38 ¶ 6.)  She avers that Davy suggested that she take out an umbrella policy "to provide further coverage in the event of a large liability loss."  (*Id.* ¶ 9.)  Arntzen agreed, and she took out a personal liability umbrella policy (PLUP) with a $1,000,000 liability limit through State Farm, which was in effect at all relevant times.  (*See* Doc. No. 25-1 at 3; Doc. No. 38 ¶ 11.)  Arntzen believed the PLUP "added umbrella coverage to Mr. Dobbs'[s] and my insurance program [i.e., the Condo Policy]."  (Doc. No. 38 ¶ 11.)

Dobbs is not a named insured on the PLUP (Doc. No. 25-5 at 1), which only covers:

> you [Arntzen] and your relatives whose primary residence is your household; . . . any other human being under the age of 21 whose primary residence is your household . . . ; any other person . . . to the extent they are liable for the use of an automobile, recreational motor vehicle or watercraft by a

---

[2] The Condo Policy itself is not in the record.

2

person included [*supra*].

(Doc. No. 25-5 at 9.)  The PLUP defines "relative" as "any person related to you [Arntzen] by blood, adoption, or marriage."  (*Id.* at 10.)  Dobbs does not meet this definition.

The PLUP also provides that the assignment of any rights under the policy are valid "only after we [State Farm] give our written consent" to such assignment.  (*Id.* at 17.)

**B.      The Bicycle Collision and Ensuing Litigation**

In August 2018, Dobbs and Richards were involved in a bicycle collision on a bike path in Minneapolis.  (Doc. No. 25-4 ¶ 1.)  Richards was injured.  (*Id.*)  Richards brought a lawsuit against Dobbs in Minnesota state court, alleging that Dobbs's negligence caused her injuries, which had resulted in significant medical expenses, among other things.  *See Richards v. Dobbs*, No. 27-CV-22-10876, Index #2 (Minn. Dist. Ct. July 22, 2022).

Eventually, Richards, Dobbs, and Arntzen (who was not a named party in the lawsuit) entered into a *Miller-Shugart*-style settlement agreement[3] (Agreement) by which both Dobbs and Arntzen agreed that Richards sustained damages in excess of $1.3 million as a result of Dobbs's negligence.  (Doc. No. 25-4 ¶ 7.)  The Agreement provides that State Farm "has acknowledged that it is obligated to indemnify William Dobbs for the claims of Kelly Richards under [the Condo Policy]," but that State Farm "has claimed that it has no obligation to defend or indemnify William Dobbs for the claims of Kelly Richards under

---

[3] Under *Miller v. Shugart*, 316 N.W.2d 729, 734 (Minn. 1982), if an insurance carrier denies coverage for a liability claim brought by an insured, an insured and plaintiff may agree to the entry of judgment against the insured on the condition that the judgment is collectible only from the insurer.

[the PLUP] which provides liability limits of $1,000,000." (Doc. No. 25-4 ¶ 6; *see also* Doc. No. 25-3 (denial of coverage letter).) Richards agreed to dismiss the lawsuit upon the state court's entry of judgment in Richards's favor in the amount of $1.3 million, which State Farm was to pay to Richards on Dobbs's behalf, and that State Farm would pay $300,000 in satisfaction of that judgment. (Doc. No. 25-4 ¶ A.3.) Dobbs and Arntzen purported to assign their respective rights under the PLUP to Richards so that she may pursue a separate coverage action.[4] (*Id.* ¶¶ B.4, C.) Dobbs and Arntzen also agreed to cooperate with Richards "with the investigation and pursuit of any action or proceeding contemplated by this Agreement." (*Id.* ¶ D.4.)

### C.    This Action

In August 2024, Richards filed her three-count Complaint. (Doc. No. 1.) In Count I, she alleges that State Farm agreed to provide Dobbs with coverage under the PLUP but breached that policy by failing to provide coverage for Dobbs's liability to Richards. (*Id.* ¶¶ 24–29.) In Count II, she alleges that State Farm insurance agent Ian Davy negligently procured insurance for Dobbs and Arntzen.[5] (*Id.* ¶¶ 30–41.) Finally, in Count III, she asserts a claim for reformation of coverage; specifically, she asks that the PLUP should be

---

[4] There is no evidence in the record that State Farm consented to the assignment of rights under the PLUP, and State Farm is not a party to the Agreement. (*See* Doc. No. 25-4; *see also id.* ¶ 8 (expressly acknowledging that State Farm "has been placed on notice of the parties' settlement negotiations, but . . . has declined to participate in any settlement negotiations relating to [the PLUP]").)

[5] Though Count II asserts that Davy engaged in tortious conduct, Richards did not name Davy as a party to the lawsuit.

read so as to conform to the Condo Policy to avoid coverage gaps (i.e., to provide coverage for Dobbs's liability to Richards). (*Id.* ¶¶ 42–47.)

Discovery commenced in late November 2024. (*See* Doc. No. 9.) On December 9, 2025, Magistrate Judge Shannon G. Elkins issued a pretrial scheduling order that required the parties to "commence fact discovery procedures in time to be completed on or before May 1, 2025." (Doc. No. 12 at 2.) As a result, to meet this deadline, any party seeking to serve discovery requests on the other must have done so no later than April 1, 2025. *See* Fed. R. Civ. P. 33(b)(2) (providing for thirty-day response period), 34(b)(2)(A) (same), 36(a)(3) (same).

Richards served no discovery requests on State Farm during the discovery period. For its part, State Farm served discovery requests on Richards. However, Richards did not timely respond to State Farm's interrogatories and document requests and, when she did, the responses comprised identical and nonspecific objections and advised that "[d]iscovery is continuing." (Doc. No. 25-6 at 2 (setting forth evidence of State Farm's service of discovery requests on February 19, 2025); Doc. Nos. 25-8, 25-9 (showing Richards's responses to State Farm's discovery requests, which were served on April 7, 2025).) Richards never responded to State Farm's Requests for Admissions. Richards also never sought to extend the discovery deadlines set forth in the pretrial scheduling order.

Then, on April 2, 2025 (the day after any timely discovery requests would have had to have been served under the pretrial scheduling order), State Farm filed its initial motion for summary judgment. (Doc. No. 13.) Approximately one week later, Richards's counsel issued a third-party subpoena on nonparty Davy (Subpoena) under Rule 45. (Doc. No. 35-

5

2 at 1–6.)  In the Subpoena, Richards's counsel requested that Davy produce "Your complete files, documents, and communications . . . involving or relating to State Farm insureds William Dobbs and/or Karen Arntzen," and "all correspondence and documents exchanged with State Farm concerning Dobbs and/or Arntzen."  (*Id.* at 3.)  Richards's counsel requested a response by April 28, 2025.  (*Id.*)

State Farm's counsel corresponded with Richards's counsel after service of the Subpoena and advised that "[t]he vast majority of the documents sought (if not all) would be the property of State Farm, not independent contractor Davy," and, therefore, "Davy would not be authorized to produce them."  (Doc. No. 35-2 at 8.)  Davy himself neither objected nor otherwise responded to the Subpoena.  After the April 28, 2025 return date came and went without response from Davy, Richards did not move to compel Davy's compliance with the Subpoena.

State Farm moved to quash the Subpoena on the following three grounds: (1) Richards sought no discovery from State Farm during the discovery period but now seeks State Farm-owned documents through a third party; (2) the Subpoena sought documents from a nonparty to the litigation who does not have custody, control, or possession, or even the legal rights to disclose the documents; and (3) the documents sought by the Subpoena are "more easily and readily available to Plaintiff by way of her agreement to cooperate with" Dobbs and Arntzen.  (Doc. No. 20 at 7.)  Ultimately, the Magistrate Judge granted State Farm's motion to quash on grounds that the Subpoena was "just served too late," and that "discovery should have been sought months ago."  (Doc. No. 35-3 at 14:18–15:25.)

6

**DISCUSSION**

Richards now objects to the Magistrate Judge's order to quash the Subpoena and State Farm now moves for summary judgment. Because the Court concurs with the Magistrate Judge that the timing of the subpoena unduly burdened Davy and circumvented the discovery deadlines in the pretrial scheduling order, the Court overrules Richards's objection to the Magistrate Judge's ruling. In addition, because the Court concurs with the Magistrate Judge that the record presented contains no genuine disputes of material fact that could support a finding in Richards's favor, the Court grants State Farm's motion for summary judgment on all claims.

## I.    OBJECTION TO THE MAGISTRATE JUDGE'S NONDISPOSITIVE RULING

Richards objects to the Magistrate Judge's ruling in favor of State Farm on their motion to quash the Subpoena. (Doc. No. 35.) District courts review the rulings of Magistrate Judges on nondispositive pretrial orders with extreme deference. *Coons v. BNSF Ry. Co.*, 268 F. Supp. 3d 983, 991 (D. Minn. 2017). The Court will reverse such orders only when the Magistrate Judge's decision is clearly erroneous or contrary to law. *Id.*; Fed. R. Civ. P. 72(a); D. Minn. L.R. 72.2(a)(3). A decision is "clearly erroneous" when "the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Coons*, 268 F. Supp. 3d at 991 (citation omitted) (internal quotation marks omitted). A decision is "contrary to law" when it "fails to apply or misapplies pertinent statutes, case law, or rules of procedure." *Id.*

Under the Federal Rules of Civil Procedure, any officer of the Court "responsible

for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). The Court "*must* enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." *Id.* (emphasis added). The district court "*must* quash or modify a subpoena that," among other reasons not at issue here, "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv) (emphasis added).

When considering the motion to quash, the Magistrate Judge made the following oral ruling:

> First I want to note that the Court does not find anything wrong with the subpoena itself as it seeks information relevant to the case and the claims made in the Complaint.
>
> If the subpoena is asking for Mr. Davy's communications with State Farm and Mr. Davy's communications with Dobbs and Arntzen, they're as much in Mr. Davy's possession as they are in State Farm's possession.
>
> And Mr. Davy should have access to his own e-mail, should have kept his own files regarding the Dobbs and Arntzen policies. If he doesn't have any communication, it's his job to say so, not State Farm's job to say that he is not in possession and does not have these items under his control.
>
> I don't think that State Farm has the right to object to the subpoena being unduly burdensome or expensive either.
>
> But what the Court finds is that this third-party subpoena is just served too late, and the Court is relying on the decisions in *Marvin Lumber* and *Jacobson*. This discovery should have been sought months ago, first from State Farm, possibly from Dobbs and Arntzen, and then from Mr. Davy, in any—no particular order, but all three of them might have had this information.

> So the Court does find that State Farm has the right to object to the timing of the third-party subpoena before the close of fact discovery, just as in the *Marvin Lumber* and just as in the *Jacobson* cases.
>
> So the Court is going to grant the motion to quash the subpoena, and hopefully there will be other ways for the plaintiff to get the information they need from both Dobbs and Arntzen in the future. But the defendant's motion is granted.

(Doc. No. 35-3 at 14:18–15:25.)

Richards argues that this ruling should be reversed for two reasons because it was based "on inapposite cases"—specifically, *Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 177 F.R.D. 443 (D. Minn. 1997) and *Jacobson v. Hound Dog Pet Hotel, LLC*, No. 04-CV-3809 (PAM/RLE), 2005 WL 8164434 (D. Minn. May 23, 2005). (Doc. No. 35 at 5.) The Court does not agree and concurs with the Magistrate Judge's ruling.[6]

Richards argues that the Magistrate Judge erroneously based her ruling on *Jacobson v. Hound Dog Pet Hotel, LLC*. In *Jacobson*, an ex-employee brought sexual harassment claims against her ex-employer. *Id.* at *1. One week before the close of discovery, the plaintiff issued a subpoena to a third party (specifically, the defendant's tax preparer) seeking certain tax and financial records about the defendant. *Id.* The plaintiff conceded that she had never sought these documents from defendant during the discovery period. *Id.* at *3. The plaintiff moved to compel compliance with the subpoena, and the defendant

---

[6] The Magistrate Judge also based her decision on an alternative ground: that the subpoena was issued on April 11, and therefore, Davy could not have responded to the subpoena prior to the close of fact discovery. In light of the Court's decision that the subpoena created an undue burden on Davy and that circumvented the discovery deadlines, the Court need not also address Richards's challenges to this separate and independent basis for the Magistrate Judge's nondispositive ruling.

objected. *Id.* at *1. Ultimately, the Court declined to compel the third party's compliance with the subpoena for two reasons. First, the Court observed that the plain text of Rule 45 requires that a subpoenaing party must take steps to avoid imposing an undue burden on a subpoenaed third party and that the Court is required to enforce that duty; in that case, the plaintiff abdicated her duty because she "neglected, without adequate explanation, to request the documents from the Defendant during the course of discovery." *Id.* at *3. Second, the Court acknowledged that the plaintiff's issuance of the subpoena so close to the close of discovery, and without having requested the documents during the discovery period, demonstrated a clear "attempt to circumvent the discovery deadlines, which had been imposed by our Pretrial Schedule and, in doing so, it unnecessarily caused an undue burden to be placed on a non-party." *Id.* Further, the Court also observed, but does not appear to have primarily based its decision on the facts, that the requested information was not necessary for the plaintiff to prove her case, and that the subpoena response time was impermissibly short (a mere four days). *Id.* at *4.

The Court concurs with the Magistrate Judge and concludes that the reasoning in *Jacobson* applies here. Even though the documents sought by Richards via the Subpoena indeed may be in Davy's custody, control, and possession, Richards took no effort to obtain these documents from State Farm at any point during the discovery period. As in *Jacobson*, and under the circumstances of this case, the Subpoena imposed an undue burden on Davy, a nonparty, for no discernible reason other than Richards's counsel's seeming inattention to the discovery deadlines. In addition, permitting the discovery would effectively undermine the pretrial scheduling order. Thus, Richards's objection is overruled because

the Magistrate Judge's ruling is neither clearly erroneous nor contrary to law.

## II.    STATE FARM'S MOTION FOR SUMMARY JUDGMENT

State Farm moves for summary judgment on all of Richards's claims.  (Doc. No. 23.)  Summary judgment is warranted if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is "material" if its resolution might affect the outcome of the suit under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To survive the motion, the nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial.  *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).  When the parties disagree on the facts, courts do not resolve the factual disputes because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255.  Further, a party opposing summary judgment must "set forth specific facts in the record showing that there is a genuine issue for trial," and may not rest on mere denials.  *Emps. Mut. Cas. Co. v. Wendland & Utz, Ltd.*, 351 F.3d 890, 893 (8th Cir. 2003) (citing *Anderson*, 477 U.S. at 256).

State Farm argues that it is entitled to summary judgment because Richards has come forward with no evidence to support her claims.  For her part, Richards requests a continuance on the Court's consideration of the summary judgment motion under Federal Rule of Civil Procedure 56(d) so that she may have time to complete the discovery necessary to oppose State Farm's motion.  As discussed below, the Court declines to continue its consideration of the motion and grants the motion in State Farm's favor.

## A.    Rule 56(d)

As a threshold matter, Richards asserts in an affidavit of counsel that she has been prevented from fairly opposing State Farm's motion for summary judgment; as a result, she seeks some form of unspecified "relief under Federal Rules of Civil Procedure 56(d)." (Doc. No. 37 ¶ 8.)

Rule 56(d) provides that, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," then the court may order relief, such as deferring its consideration of a summary judgment motion, to allow time for the nonmovant to obtain discovery, or other appropriate relief. This rule cannot be invoked "to pursue a mere hope that something may turn up." *Heartland, Inc. v. Povolny Specialties, Inc.*, 700 F. Supp. 3d 704, 712 (D. Minn. 2023). For that reason, a party seeking relief under Rule 56(d) must make a three-part showing: "(1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion." *Toben v. Bridgestone Retail Operations., LLC*, 751 F.3d 888, 895 (8th Cir. 2014) (citation omitted). The Rule is "designed to minister to the vigilant, not to those who slumber upon perceptible rights." *McKeague v. One World Techs., Inc.*, 858 F.3d 703, 707 (1st Cir. 2017) (citation omitted) (internal quotation marks omitted). The Court has "wide discretion" when deciding a motion under Rule 56(d). *Toben*, 751 F.3d at 895.

Here, Richards avers that some kind of relief—presumably a continuance of the summary judgment motion so that she may seek discovery—is necessary under Rule 56(d).

(Doc. No. 37 ¶ 8.)  Richards, however, provides no further detail about what relief she seeks or, if Davy were ordered to comply with the Subpoena, what specific facts would surely be uncovered that are needed to assist her opposition to State Farm's motion. Further, Richards's counsel's affidavit does nothing to explain why she was prevented from obtaining the now sought-after discovery during the several months-long discovery period in this case (the cutoff deadline for which she never once moved to extend).  Thus, Richards's counsel's affidavit is insufficient to justify any relief under Rule 56(d).  *E.g.*, *Myers v. Itasca Cnty. HRA*, No. 24-CV-1395 (JRT/LIB), 2025 WL 1942411, at *1 (D. Minn. July 15, 2025) (denying nonmoving party's request to continue consideration of summary judgment motion to provide her time to take additional discovery on grounds that the discovery sought could have been—but was not—obtained during the discovery period and because nonmoving party "provides no information as to how any additional facts from this discovery might help her prevail"); *Marvin Lumber & Cedar Co. v. Marvin Architectural Ltd.*, 217 F. Supp. 3d 1009, 1014–15 (D. Minn. 2016) (denying nonmoving party's request to delay ruling on summary judgment motion on grounds that affidavit in support of request did not identify the "*specific* facts" it hopes to uncover or explain how those facts are essential to their opposition (emphasis in original)); *Smith v. Securus Techs., Inc.*, 120 F. Supp. 3d 976, 988 (D. Minn. 2015) (denying nonmoving party's request to defer ruling on summary judgment motion where affidavit in support of Rule 56(d) request "provided only speculative hope of finding evidence to support their claim" (citation modified)); *see also Bowa Ests. Ltd. v. Ass'n of Apartment Owners of Wailea Point Vill.*, 2025 WL 1180450, at *11 (D. Haw. Apr. 22, 2025) (denying Rule 56(d) request made by

party that served no discovery on grounds that "Plaintiffs cannot sit on their hands while time passes and then claim that summary judgment is premature based on evidence that they have not requested, particularly when they have no explanation for how it would . . . prevent summary judgment"); *Harrison v. Gregg*, No. 1:12-CV-05, 2014 WL 1276153, at *3 (S.D. Ohio Mar. 27, 2014) (concluding that the Magistrate Judge did not err by denying nonmoving party's Rule 56(d) request where the party conducted no discovery during the discovery period and did not set forth specified reasons why he could not present facts essential to justify his opposition to the opposing party's motion for summary judgment).

The request for a continuance under Rule 56(d) is denied.

## B.    Breach of Contract (Count I)

State Farm argues that it is entitled to summary judgment on Count I, Richards's claim that it breached the PLUP by denying coverage to Dobbs for his liability to Richards. The Court agrees.  Richards lacks standing to pursue Count I.

In a diversity action, "[s]tate law governs the interpretation of insurance policies." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Terra Indus., Inc.*, 346 F.3d 1160, 1164 (8th Cir. 2003) (citation omitted).  In Minnesota, "the interpretation of insurance contract language is a question of law as applied to the facts presented."  *Short v. Midwest Fam. Mut. Ins. Co.*, 602 N.W.2d 914, 915 (Minn. App. 1994); *see also Midwest Fam. Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 636 (Minn. 2013) (advising that "insurance polic[ies] must be construed as a whole, and unambiguous language must be given its plain and ordinary meaning" (quotation omitted)).  Courts are to interpret insurance policies in accordance with the general principles of contract construction; in other words, by "giving effect to the

14

intent of the parties." *Network F.O.B., Inc. v. Great Am. Ins. Co. of N.Y.*, 30 F. Supp. 3d 831, 833 (D. Minn. 2014) (citing *Thommes v. Milwaukee Ins. Co.*, 641 N.W.2d 877, 879 (Minn. 2002)).

The insured has the initial burden of establishing a prima facie case of coverage. *SCSC Corp. v. Allied Mut. Ins. Co.*, 536 N.W.2d 305, 311 (Minn. 1995); *see also Eng'g & Constr. Innovations, Inc. v. L.H. Bolduc Co.*, 825 N.W.2d 695, 705 (Minn. 2013) (providing that the party claiming coverage has the burden of proving coverage under policy). "What constitutes a prima facie showing of coverage depends on the language of the particular policy." *SCSC Corp.*, 536 N.W.2d at 311.

State Farm argues that neither Dobbs nor Arntzen could have assigned rights under the PLUP to Richards and, as a result, Richards cannot assert a claim for breach of the PLUP. The Court addresses each argument in turn.

### 1.    *Dobbs's purported assignment of rights to Richards*

In the Agreement, Richards agreed to dismiss her claims against Dobbs on the condition that he assign his rights under the PLUP to her so that she may seek to recover from State Farm in this coverage suit. (*See* Doc. No. 25-4.) State Farm argues that Dobbs had no rights under the PLUP to assign to Richards. State Farm is correct. Unless policy language or other facts show that Dobbs was an insured under the PLUP, he is not entitled to coverage under it. *Metro. Prop. & Cas. Ins. Co. v. Marti*, 162 F. Supp. 3d 868, 881 (D. Minn. 2016) (concluding policy did not provide coverage because, under policy's plain language, the claimant was not an insured).

Here, there is no evidence in the record that Dobbs was a named insured or that he

otherwise met the definition of an "insured" under the PLUP—after all, he is not related to the named insured (Arntzen) by blood or by marriage. (*See* Doc. No. 38 ¶ 3; Doc. No. 25-5 at 1, 9, 10.) Further, Richards did not respond or object to State Farm's Requests for Admissions, in which State Farm sought admissions that "Dobbs is not insured under the PLUP," that "Dobbs is not an insured under the PLUP," that "Dobbs is not a named insured under the PLUP," and that "Arntzen is the only named insured on the PLUP." (Doc. No. 25-11 ¶¶ 4–6, 11.) Having not responded to these Requests for Admissions, Richards is deemed to have admitted these as uncontroverted facts. Fed. R. Civ. P. 36(a)(3); *see also Miller v. Stifel, Nicolaus & Co., Inc.*, 812 F. Supp. 2d 975, 993 (D. Minn. 2011) ("A failure to respond in a timely manner deems the request admitted, and any matter admitted under Rule 36 is conclusively established." (quotation omitted)). Summary judgment may be entered on these admitted facts alone. *Luick v. Graybar Elec. Co.*, 473 F.2d 1360, 1362 (8th Cir. 1973) (advising that "[u]nanswered requests for admissions render the matter conclusively established" such that "summary judgment may be based on admitted matter"); *United States v. Sonibare*, 504 F. Supp. 2d 566, 572 (D. Minn. 2007) (granting summary judgment in plaintiff's favor in part because defendant's failure to respond to RFAs rendered certain facts conclusively admitted).

Because Richards has conceded that Dobbs was not an insured under the PLUP, Dobbs had no rights under the PLUP to assign to Richards.

### 2.    *Arntzen's purported assignment of rights to Richards*

State Farm next argues that Arntzen's promise of assignment of rights under the PLUP to Richards in the Agreement is invalid. Again, State Farm is correct.

First, the plain language of the PLUP provides that no assignment of rights is valid unless approved, in writing, by State Farm.  (Doc. No. 25-5 at 17.)  There is no evidence in the record of State Farm's approval of any assignment of rights under the PLUP by either Dobbs or Arntzen; indeed, State Farm is not even a signatory to the Agreement and is not bound by its terms.  (Doc. No. 25-4; Doc. No. 25-11 ¶¶ 19, 20.)  Therefore, any purported assignment of rights is invalid.

Second, even if the record did contain evidence that State Farm approved an assignment of rights from Arntzen to Richards, any such assignment would be unenforceable for lack of consideration.  Consideration "requires the voluntary assumption of an obligation by one party on the condition of an act or forbearance by the other." *Chalmers v. Kanawyer*, 544 N.W.2d 795, 798 (Minn. App. 1996) (quotation omitted).  It also exists if "something of value has passed between the parties."  *Id.*  In the Agreement, Richards agreed to settle her personal injury claims *against Dobbs* (who is not an insured under the PLUP, *see supra*) in exchange for Arntzen's purported assignment of rights under the PLUP to Richards.  Arntzen (who had no personal injury claims pending against her) received nothing in return for her purported assignment of rights to Richards.  Therefore, Arntzen's purported assignment of rights is not valid.

In conclusion, because Dobbs had no rights under the PLUP to assign to Richards and because Arntzen's promise to assign rights to Richards was invalid, Richards is a third party to the PLUP and has no standing to assert a claim under it.  "[T]here is no privity of contract between a third-party claimant and an insurer." *Freeman v. Niznik*, 515 F. Supp. 2d 979, 983 (D. Minn. 2007) (citing *Morris v. Am. Fam. Mut. Ins. Co.*, 386 N.W.2d 233,

237 (Minn. 1986)); *Wurm v. John Deere Leasing Co.*, 405 N.W.2d 484, 486 (Minn. App. 1987) ("[S]trangers to a contract acquire no rights under the contract."). Absent such privity, Richards has no right to bring a breach-of-contract action against State Farm, and the Court grants summary judgment in State Farm's favor on Count I.

### C.    Negligent Procurement (Count II)

State Farm argues that it is entitled to summary judgment on Count II because the record lacks any evidence that would support Richards's claim for Davy's negligent procurement of insurance.[7] The Court agrees.

To prevail on her claim of negligent procurement, Richards must come forward with evidence "(1) that the agent owed a duty to the insured to exercise reasonable skill, care, and diligence in procuring insurance; (2) a breach of that duty; and (3) a loss sustained by the insured that was caused by the agent's breach of duty." *Graff v. Robert M. Swendra Agency, Inc.*, 800 N.W.2d 112, 116 (Minn. 2011). An insurance agent's duty is "to exercise the standard of skill and care that a reasonably prudent person engaged in the insurance business will use under similar circumstances." *Melin v. Johnson*, 387 N.W.2d 230, 232 (Minn. App. 1986) (quotation omitted). In the absence of a special relationship or some contract term requiring more, the duty is to act in good faith and to follow instructions. *Gabrielson v. Warnemunde*, 443 N.W.2d 540, 543 (Minn. 1989).

Here, the record contains no facts about Arntzen's and Davy's communications

---

[7] State Farm also argues that Count II fails because Davy was never joined as a party, and that his participation in the case is necessary to adjudicate Count II. However, because Count II fails for another reason, the Court need not analyze this argument.

regarding procurement of the PLUP.  At most, Arntzen's declaration provides as follows:

> 8.  I asked Mr. Davy whether I could get insurance coverage for my vehicle from the same insurance company that provided insurance for William Dobbs'[s] condominium.
>
> 9.  Mr. Davy suggested that I consider an umbrella policy to provide further coverage in the event of a large liability loss.
>
> 10.  I am not trained in insurance and relied on Mr. Davy's expertise to guide me in my insurance purchases.
>
> 11.  I accepted Mr. Davy's advice and added umbrella coverage to Mr. Dobbs'[s] and my insurance program.

(Doc. No. 38 ¶¶ 8–11.)    According to this evidence, in Arntzen's own words, Davy followed Arntzen's instructions.  Nothing about this declaration suggests that Arntzen expressed that she wished to obtain broadened coverage for Dobbs.  Nothing further is known about Arntzen's and Davy's communication.  Thus, Richards has not come forward with any evidence that Davy flouted any duty to Dobbs or Arntzen.[8]

### D.    Contract Reformation (Count III)

State Farm argues that the Court should grant summary judgment in its favor on Count III because the record is devoid of evidence that would support a request to reform the PLUP so as to fill any gaps in the Condo Policy's coverage (in other words, to reform the PLUP so that it covers Dobbs).  (Doc. No. 24 at 29–30.)

---

[8] The Court is also concerned that Richards lacks standing to pursue a negligent-procurement claim on Arntzen's and Dobb's behalf.  By failing to respond to State Farm's Requests for Admissions, Richards conceded that she has no knowledge of any conversations between Dobbs and Arntzen on the one hand, and State Farm on the other. (Doc. No. 25-11 ¶¶ 15–18.)  She also admitted that she has no knowledge of either Dobbs's or Arntzen's application for coverage under the PLUP.  (*Id.* ¶ 14.)

The parties appear to agree that Minnesota law governs the question of the propriety of policy reformation. (*See* Doc. No. 36 at 11–12; Doc. No. 24 at 29–30.) In Minnesota, courts may reform insurance policies if the party seeking reformation proves the following:

> (1) there was a valid agreement between the parties expressing their real intentions;
>
> (2) the written instrument failed to express the real intentions of the parties; *and*
>
> (3) this failure was due to a mutual mistake of the parties, or a unilateral mistake accompanied by fraud or inequitable conduct by the other party.

*Emps. Mut. Cas. Co.*, 351 F.3d at 894 (quoting *Leamington Co. v. Nonprofits' Ins. Ass'n*, 615 N.W.2d 349, 354 (Minn. 2000)) (quotation omitted) (emphasis added). The burden of proof on a reformation claim rests on the party requesting it, and it is an "onerous" one. *Id.* (quoting *Wood Goods Galore, Inc. v. Renaissance Ass'n of Minn.*, 478 N.W.2d 205, 209 (Minn. App. 1991)). If the plaintiff's theory for reformation is based on mutual mistake (as here), "the evidence must be clear, precise, and convincing." *Id.* (quotation omitted).

As to the first element, Richards must prove, with clear and convincing evidence, that "there was a valid agreement between the parties [i.e., Dobbs and Arntzen on the one hand, and State Farm on the other] expressing their real intentions." *Id.* To this point, the "intentions shared between the parties must be identical," and "there must be evidence that there was an actual agreement as to the terms of the policy." *Id.* at 895 (affirming district court's granting summary judgment in favor of insurer on contract-reformation claim on grounds that plaintiff failed to come forward with evidence of shared identical intentions

before the policy issued) (quotation omitted); *see also Tomars v. United Fin. Cas. Co.*, No. 12-CV-2162 (JNE/HB), 2015 WL 3772024, at *8–10 (D. Minn. June 17, 2015) (same).

Here, there is no record evidence (let alone clear and convincing evidence) that shows that, prior to entering into the Policy and the PLUP, State Farm and Arntzen shared identical intentions about the scope of coverage, but that this agreement did not make its way into the policies that ultimately issued.  For this reason, State Farm is entitled to summary judgment on Count III.

Richards urges this Court to reach the contrary conclusion, but the Court cannot do so for two reasons.  First, Richards's arguments are unmoored to any record evidence.  A party cannot overcome a motion for summary judgment if they fail to set forth specific facts in the record showing that there is a genuine issue for trial.  *Anderson*, 477 U.S. at 256.  Second, Richards's arguments focus on the *post-claim* conduct of the parties (i.e., the parties' understanding after the policies had already issued) whereas the reformation inquiry requires focus on the *pre-agreement* conduct of the parties (i.e., what the parties understood before they committed their agreement to a formal written instrument).  That is, to overcome State Farm's motion, Richards must point to clear and convincing evidence that Arntzen and State Farm both meant for Dobbs to have been covered by the PLUP before the PLUP was put into a written instrument.  There is no such evidence in the record.  At most, in Arntzen's declaration, she avers that she inquired about insurance coverage from the same company that provided the Condo Policy, that Davy suggested she obtain an umbrella insurance policy, and that Arntzen followed this suggestion.  (Doc. No. 38 ¶¶ 8–11.)  These passages say nothing about Davy's or State Farm's understanding about

the nature of Arntzen's purchase of the PLUP, much less clearly and convincingly establishing that "there was a valid agreement between the parties expressing their real intentions" prior to the PLUP's issuance. *Emps. Mut. Cas. Co.*, 351 F.3d at 894.

Thus, absent citation to sufficient record evidence of Dobbs's, Arntzen's, and State Farm's pre-agreement agreement, and that such agreement was different from the PLUP that ultimately issued, State Farm is entitled to summary judgment on Count III.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1.  Plaintiff Kelly Richards's objection to the Magistrate Judge's ruling on Defendant State Farm Fire and Casualty Company's Motion to Quash the Subpoena (Doc. No. 35) is OVERRULED.

2.  Defendant State Farm Fire and Casualty Company's Motion for Summary Judgment (Doc. No. 23) is GRANTED and this matter is DISMISSED WITH PREJUDICE.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  September 19, 2025                    /s/ *Jeffrey M. Bryan*
                                             Judge Jeffrey M. Bryan
                                             United States District Court